### BARKER v. NORTHERN PAC. RY. CO.

(Circuit Court, E. D. Missouri, E. D. February 2, 1895.)

No. 3,774.

1. RELEASE—RESCISSION—IMPROVIDENCE.
   The settlement of a claim for personal injuries will not be set aside merely because it is improvident.
2. SAME—INCAPACITY OF PERSON CONTRACTING.
   The mere fact that a person at the time of making a settlement for personal injuries was still sensitive of her injuries, and had been taking medicine, is not ground for rescission; the medicine not being such as to impair her mental faculties, nor the pain such as to subvert her judgment.
3. SAME—RETURN OF CONSIDERATION.
   One cannot have a settlement for injuries rescinded, without having offered to return the money received thereunder.
4. SAME—MISTAKE.
   Settlement of a claim for injury to person and loss of property will not be rescinded on the ground that it was intended only to cover the loss of property, where there was no fraud, simply because the party seeking to set it aside failed to inform herself of what was contained in the agreement.

Suit by Barker against the Northern Pacific Railway Company to set aside a settlement of a claim for personal injuries.

Charles E. Gibson, for complainant.

Campbell & Ryan, for defendant.

PRIEST, District Judge. Plaintiff, who was injured in the derailment of one of the respondent's passenger trains on the early morning of January 15, 1892, and who on January 26th, following, made a settlement of her damages for the sum of $500, and for that consideration, which she retains, executed a release, now seeks to set aside the release, upon the grounds—First, that it was procured from her by fraud and artifice, at a time when she was not master of her mental faculties; and, second, that it does not express the true agreement, she having only settled for the loss of her personal effects, while the release embraces her personal injuries as well. I find, as a fact, no artifice or fraud was practiced upon her, and at the time she made the adjustment, and executed the release,

she was in a condition of perfect mental self-possession, capable of comprehending, and actually comprehending, each successive step in the progress of the settlement. Whether the settlement was a wise one, is a question upon which a court is not at liberty to enter, after it has ascertained that she had ample understanding to appreciate its scope, and know what she was doing. Courts of equity cannot, any more than courts of law, relieve parties from the bonds of improvident, hasty, or illy-considered agreements. But, were the question now presented to me whether the contract was a provident one for her to have made, I could not say that it was not. Manifestly, the injury was not wantonly inflicted. The cause of the accident is not revealed by the testimony. It is true, a passenger makes a prima facie case, but not a conclusive one, by merely proving the derailment of the train. A trier of fact might, in the very nature of the accident, find circumstances and conditions which would repel the prima facie case, and refuse to apply an inference of negligence. This presumption may be conclusively overcome. The plaintiff's injuries are comparatively slight. They were not permanent, nor of an excruciatingly painful character. The fair inference is that her most serious injury was occasioned by an effort to extricate her from the car, in pulling her out by the arm. Her arm was dislocated at the shoulder joint, but was readily reduced. It is true that the injury was painful, but so ordinarily, for only a short time. I should say, conceding plaintiff an unquestioned and undebatable right to recover, that her damages, including loss of property, as well as personal injuries, ought not fairly to exceed twelve or fifteen hundred dollars. The prompt settlement of the case at a compromise of five hundred dollars, the amount paid plaintiff, in my opinion, was a reasonable and fair adjustment. It is true that the plaintiff had been taking medicine and was still sensitive of her injury; but the medicines administered to her were not of a character to impair her mental faculties, nor was her physical pain of a nature to subvert her judgment. If persons are to be denied the capacity to make a valid contract, because suffering a slight pain or sickness or nervousness, but few contracts could be sustained by the courts. I suppose the majority of wills are made upon beds of sickness, in appreciation by the testator of an early dissolution. Those conditions are never held sufficient to discredit and overthrow the wills. The usual inquiry and test is whether the party possessed sufficient understanding to know the nature of the act and its effects. If this be answered in the affirmative, that is an end of the matter. Why such a rule should not be applied in cases of contracts, I can find no substantial reason. It may be that a person in a condition of illness is less able to resist strong importunities and persistent persuasion than in a state of health; and undue persuasion, under these circumstances, may amount to coercion. But I find nothing of that sort in this case. The representative of the railway company, according to plaintiff's own testimony, was not so insistent.

But there is another insurmountable obstacle in the complainant's way upon this feature of this case; and that is, although she desires to set aside the contract of release, she still retains the con-

sideration, and has never offered to return it. Where a party attempts to rescind a contract, the rescission must be complete. He cannot affirm it in part and reject it in part. Common honesty would require him seeking to escape the burdens of the contract to return the benefits which he has received. This is not only a rule of common honesty and fairness, but has been recognized by the courts from time immemorial. There are some few exceptions where railroads have been involved, but they simply illustrate that courts sometimes give way to sentiment, and allow compassion and sympathy to rule, instead of tranquil judgment. And these offers of restitution should come promptly, not reluctantly or tardily. To withhold a restitution is to exhibit a want of confidence in the integrity and justness of his case, who complains of a contract, and seeks to set it aside because of fraud. Vandervelden v. Railway Co., 61 Fed. 54; Johnson v. Granite Co., 53 Fed. 569; Gould v. Bank, 86 N. Y. 75; Cobb v. Hatfield, 46 N. Y. 533; Thayer v. Turner, 8 Metc. (Mass.) 550; Kimball v. Cunningham, 4 Mass. 502; Doane v. Lockwood, 115 Ill. 490, 4 N. E. 500; Railway Co. v. Hayes (Ga.) 10 S. E. 350; Burton v. Stewart, 3 Wend. 236; Bain v. Wilson, 1 J. J. Marsh. 202; Jarrett v. Morton, 44 Mo. 275; Hart v. Handlin, 43 Mo. 171; Estes v. Reynolds, 75 Mo. 563; Kerr, Fraud & M. 366.

But it is said that the written instrument does not express the agreement of the parties; that the agreement was made solely with respect to the personal property belonging to plaintiff, which was burned up in the wreck. This would seem to be inconsistent with the other ground urged for setting aside the release, for this recognizes, upon the part of the plaintiff, a mind capable of contracting, and having conceived a perfect understanding in regard to the terms of a valid settlement, but that, through mistake or fraud, the written instrument evidencing the agreement was made to comprehend more than was actually agreed upon. Were the case presented alone upon the plaintiff's evidence, I should be compelled to find against her upon this issue. It is necessarily inferred from the plaintiff's testimony that the basis upon which the settlement was arrived at, comprehending both her personal injuries and the loss of personal effects, was upon the value of the personal property lost. She inquired whether, in the settlement, she would not be allowed for the pain she would suffer and had suffered in consequence of personal injury; and, according to her own statement, it was replied to her that, unless she accepted the $500 in full settlement, she would get nothing. But the instrument was read to her. She signed it,—not only signed this particular release, but one for her minor son, who was in the room with her at the time, to the same effect, settling for his personal injuries, as well as his loss of personal property. If she did not understand it, she had a right to require it to be read until she did understand it. She cannot impute her neglect to know the contents of the instrument which she signed, as a fraud upon the part of the defendant. Where there is an attempt to cancel a contract on the ground of a mistake, it must be shown that the mistake was mutual, or a mistake by the one party and a fraud by the other; and the proof must be so full, clear, and decisive as to leave no rea-

sonable doubt in the mind of the chancellor. Story, Eq. Jur. § 140, note a, and authorities. Again, a relief will not be given against a mistake, where the party complaining had within his reach the means, or at hand the opportunity, of ascertaining the true state of facts, and neglected to take advantage of them. Brown v. Fagan, 71 Mo. 563; Railroad Co. v. Shay, 82 Pa. St. 198; Wallace v. Railroad Co. (Iowa) 25 N. W. 772; Hinkle v. Railway Co. (Minn.) 18 N. W. 275; Pederson v. Railway Co. (Wash.) 33 Pac. 351. The bill will be dismissed at complainant's costs.