## COOK v. FIDELITY & DEPOSIT CO. OF MARYLAND.

(Circuit Court of Appeals, Ninth Circuit. February 1, 1909.)

No. 1,591.

**1. Compromise and Settlement (§ 18\*)—Impeachment for Fraud—Acceptance of Benefits.**

A party to a settlement cannot avoid the same on the ground of fraud while retaining money and notes received by him thereunder.

[Ed. Note.—For other cases, see Compromise and Settlement, Cent. Dig. § 81; Dec. Dig. § 18.\*]

**2. Replevin (§ 123\*)—Bond—Impeachment for Fraud.**

In an action at law in a federal court against the surety on a replevin bond, plaintiff cannot avoid the effect of a settlement made by the parties to the replevin suit by virtue of which it was dismissed on the ground that it was procured by the fraud of the plaintiff therein.

[Ed. Note.—For other cases, see Replevin, Dec. Dig. § 123.\*]

In Error to the Circuit Court of the United States for the Southern Division of the District of Idaho.

This was an action upon a replevin bond executed by the defendant in error to the plaintiff in error, who was plaintiff below.

The complaint alleges that on the 28th day of August, 1905, the Uinta Hereford Cattle Company filed in the court below an action against Cook to recover the possession of certain sheep, horses, and other personal property, alleged to be of the value of $30,000; that in that action one McLaughlin, for and in behalf and by authority of the cattle company, executed his affidavit on claim and delivery, upon which affidavit was indorsed by the attorneys for the cattle company a requirement directing the United States marshal of the District of Idaho to take the said property from Cook's possession. and that the undertaking here sued on was given in that action by the Fidelity & Deposit Company of Maryland, under and by virtue of which proceedings the marshal, on certain days therein mentioned, seized and took from the possession of Cook, 7,971 head of sheep, 4 horses, and 2 sheep-camp wagons, and delivered the same to the cattle company; that at the time of such seizure Cook was the owner of the property and in the lawful possession thereof; that on the 21st day of September, 1905, the aforesaid notice and affidavit on claim and delivery. as well as the said undertaking, were duly filed in the court below, and that on the 18th day of December of the same year, the cattle company filed in the court below its præcipe requesting the dismissal of the action, and that, accordingly, the replevin action was on that day dismissed at the cost of the plaintiff thereto; that by reason of such dismissal the condition of the undertaking was broken, and that "said undertaking by reason of said breach of said condition has become forfeited to this plaintiff, and that defendant herein has become and is liable to this plaintiff in said undertaking for the amount hereinafter set forth; that, at the time of the seizure of the property as aforesaid by the United States marshal, the value of the same was as follows, to wit: The value of said sheep was $29,891.25; the value of said horses was $400; the value of said camp outfits was $500"; that the cattle company removed all of said property from the state of Idaho and converted the same to its own use, and that by reason of the alleged taking and the alleged breach of the undertaking the said property has become and is wholly lost to the plaintiff, to his damage in the sum of $30,791.25, for which sum, with costs, the plaintiff sued.

The defendant in the action, in its amended answer, denied that the marshal took more than 7,855 sheep from the possession of the plaintiff Cook under the process mentioned, which number of sheep it admits the marshal delivered

\*For other cases see same topic & § number in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

to the cattle company, and alleges that he "so delivered said property in accordance and in compliance with the instructions of Alonzo Cook, the plaintiff herein." The amended answer also denied that Cook was at any time after August 25, 1905, the owner or in the lawful possession of any of the said property, and alleges that all times after the date last mentioned the cattle company was the owner and entitled to the possession of all of the said property. It admits that the cattle company filed in the court below its præcipe for the dismissal of its action in claim and delivery against Cook, which præcipe it alleges was (omitting title of court and cause) in this language:

"To Hon. A. L. Richardson, Clerk of the Above-Entitled Court:

"Please dismiss of record the above-entitled action, the controversy therein involved having been settled between the parties. The dismissal may be at plaintiff's costs.

"Dated this 17th day of December, 1905.

"P. W. Spaulding and
"F. S. Dietrich,
"Attorneys for Plaintiff."

That said præcipe was filed and the said cause was dismissed in compliance with the terms of agreements, made, after the commencement of the action and the seizure of the sheep, by Cook and the cattle company, by the terms of which the cattle company became bound to dismiss the action, "said parties having by mutual agreement settled the controversy involved in said suit, and said Cook having delivered said sheep and other property to said Uinta Hereford Cattle Company."

The amended answer denies that by reason of such dismissal, or for any reason, the condition of the undertaking was broken, and denies that for any reason the said undertaking became forfeited to the plaintiff, or that the defendant became or is liable to the plaintiff on said undertaking in any respect. It denies that at the time of the seizure of the property mentioned the sheep were of any greater value than $19,637.50, or that the horses were of any greater value than $50, or that the camp outfit was of any greater value than $50.

The amended answer further alleges, among other things, that on the 15th day of August, 1905, in Douglas county, Neb., the plaintiff Cook sold and transferred to the cattle company all of the property already mentioned, with other property, executing to it a bill of sale therefor, which was annexed to and made a part of the amended answer; that at the same time and place Cook and the cattle company entered into a written agreement in which is recited the fact of such sale, and in which it was agreed that in case there were less than 8,200 head of sheep Cook was to give the cattle company credit for such shortage at the rate of $3 a head, and in case there were less than 450 head of cattle Cook was to give the cattle company credit at the rate of $22 per head, such credits for shortage to be indorsed on the note of the cattle company given to Cook as a part of the purchase price of the sheep and cattle; that by the contract of August 15, 1905, it was further agreed that the cattle company was to pay Cook $3,000 in cash, and that the balance of the purchase price was to be paid in the notes of the company, secured by mortgage on certain lands therein described, which notes and mortgage were to be delivered by the cattle company to North & Stone, bankers at Evanston, Wyo., who were to deliver the same to Cook upon the delivery by Cook of the sheep and cattle to the cattle company, and when the cattle company should give notice that such delivery had been made; that by the contract of August 15, 1905, it was further agreed that Cook should deliver the sheep on their range in Bear Lake county, Idaho, on or before August 25, 1905, and to deliver the cattle at Pegram, Idaho, on or before December 1, 1905; that at the time of the execution of the agreement of August 15, 1905, the cattle company paid to Cook the $3,000 in cash, which he accepted, "and in due time and manner said Uinta Hereford Cattle Company duly complied with said agreement, and was at all times able, willing, and ready duly to fulfill and perform all the obligations of said agreement upon its part to be performed"; that on the 28th day of August, 1905,

the cattle company was, and for some time prior thereto had been, and at all times subsequent thereto continued to be, the owner and entitled to the possession of all of the property described in the plaintiff's complaint, but that the plaintiff then wrongfully withheld the possession thereof from the company, and, having refused to yield the possession thereof after demand made therefor by the company, the latter commenced the replevin action; that while that action was pending, and immediately after the property involved therein had been seized by the marshal as stated, and while the same was in his possession, the cattle company and Cook, for the purpose of settling their pending disputes and difficulties involved therein, and terminating the controversy in respect to the property, on the 2d day of September, 1905, without the knowledge, acquiescence, or assent of the defendant, the Fidelity & Deposit Company of Maryland, entered into the following agreement in writing.

### "Agreement.

"This agreement made and entered into in triplicate this second day of September, 1905, by and between the Uinta Hereford Cattle Company, of So. Omaha, Nebr., and Alonzo Cook, of Paris, Idaho, witnesseth:

"That whereas, on the 15th day of August, 1905, at So. Omaha, Nebr., the said Alonzo Cook sold to the said Uinta Hereford Cattle Company certain sheep and cattle enumerated in an agreement for escrow, said agreement, together with one certain promissory note for two thousand dollars, and four certain promissory notes for seven thousand eight hundred dollars each made by the Uinta Hereford Cattle Company, and payable to said Alonzo Cook, now being in the bank of North & Stone, bankers, at Evanston, Wyo., in escrow, and deliverable to Alonzo Cook upon certain conditions and instructions as are specified in said agreement;

"And whereas certain questions arising therefrom have caused the said Cattle Co. to commence suit in the United States Circuit Court for the District of Idaho against the said Alonzo Cook in claim and delivery for certain sheep sold as aforesaid:

"It is therefore agreed by and between the parties hereto that the said suit be dismissed at plaintiff's costs upon the fulfilling of this agreement;

"That the Uinta Hereford Cattle Company is forthwith and within a reasonable time to conform with the laws of the state of Wyoming for the doing of business therein;

"That the Uinta Hereford Cattle Company shall execute a good and sufficient real estate mortgage, using form #33169 as published by the Irwin Hodson Co., of Portland, Ore., without erasure or interlineation; said real estate mortgage to be for the same amount, securing the same notes and covering the same property as mentioned, named and described in a certain real estate mortgage now in the hands of said North & Stone, bankers, together with the above mentioned agreement and notes, executed by the Uinta Hereford Cattle Company on August 15th, 1905, and wherein said Alonzo Cook is named as grantee; that said new mortgage, together with this original agreement, is to be delivered to North & Stone, and said North & Stone to deliver same to Alonzo Cook under the same terms and conditions as those which cover the delivery of the mortgage and notes, now in the hands of North & Stone as aforesaid, and together therewith;

"That the three bands of sheep taken possession of by the United States marshal of Idaho in the action above named and now in his custody are to be counted by said Alonzo Cook and a representative of said Uinta Hereford Cattle Co. forthwith, and are to be trailed forthwith to the east side of Bear Lake in Bear Lake county, Idaho, and towards the Idaho-Wyoming state line and to be delivered to the Uinta Hereford Company by said marshal under the provisions of the Idaho statutes in claim and delivery;

"That thereafter and as soon as the amount of expenses and disbursements incurred by the Uinta Hereford Cattle Company by reason of the failure of said Alonzo Cook to deliver the sheep above mentioned to the said Uinta Hereford Cattle Company under the terms of the agreement aforesaid and in the hands of said North & Stone, bankers, can be ascertained, said amount is to be deducted from the amount owing upon the said note

for two thousand dollars above mentioned and described, and the balance owing upon said note to be paid by said cattle company to said Alonzo Cook, and said Alonzo Cook is to give a written order to said cattle company upon said North & Stone, bankers, that said two thousand dollar note to be delivered to said cattle company or its attorney.

"That the mortgage to be made and executed as above set forth is to contain besides the description as above set forth a clause conveying the water rights and ditches appurtenant thereto.

"It is further understood that this agreement is supplemental to and in addition to the agreement above mentioned as being in the possession of said North & Stone, and is no change of the terms therein, except as expressly expressed herein;

"That each party to this agreement is to have a written copy hereof marked duplicate and triplicate respectively, and the original copy hereof to be delivered as above set forth.

"In witness whereof the parties hereto have set their hands and seals hereto.                          Uinta Hereford Cattle Co.,     [Seal.]
                                  "By A. T. McLaughlin,      .
                                        "President and Manager.
                          "Alonzo Cook.                   [Seal.]

                          "Option.

"The said Alonzo Cook is to have the option that upon giving notice in writing to said Uinta Hereford Cattle Company that he desires to take stock in said company instead of and in lieu of the mortgage above mentioned and described and of the payment of the said two thousand dollar note as set forth in the above agreement, then said company is to, within twenty days after receiving said notice in writing, deliver to said Alonzo Cook, as security for the payment of the notes mentioned in this agreement certificates of capital stock of said Uinta Hereford Cattle Company of the par value of thirty thousand dollars; and at the same time to pay the said Alonzo Cook the sum of six thousand dollars to be applied upon the payment of the above mentioned notes and to be indorsed thereon, and the notes as paid to be delivered to said cattle company. Said capital stock to be as security for the payment of the balance owing upon the five notes above mentioned.
                          "Uinta Hereford Cattle Co.,
                                  "By A. T. McLaughlin.
                          "Alonzo Cook."

The amended answer further alleges that the sheep mentioned in the agreement last set out are the same sheep referred to in the aforesaid complaint and bill of sale; that the cattle company duly performed all of the conditions and obligations of the agreement of September 2, 1905, including the said option attached thereto, on its part to be performed, except as subsequently modified or waived by the respective parties as afterwards stated: that pursuant to the agreement Cook directed the marshal to turn over all of the property he had seized to the cattle company, and on or about September 5, 1905, caused all of the property covered by the agreement to be delivered to the cattle company, all of which was done without the knowledge, acquiescence, or consent of the defendant, the Fidelity & Deposit Company of Maryland. That on or about September 5, 1905, Cook exercised his right under the option attached to the agreement of September 2, 1905, and gave to the cattle company this notice in writing:

                          "Notice.

"To the Unita Hereford Cattle Company, Cokeville, Wyoming:

"Gentlemen: You are hereby notified that I desire to take the payment of $6,000.00 and delivery of $30,000.00 par value of the capital stock of your company instead of and in lieu of the $2,000.00 payment and real estate mortgage named and specified in a certain agreement made and entered into by and between yourself and myself this 2d day of September, 1905.
                          "[Signed] Alonzo Cook.
"Witness: W. R. Bryan, Bug Creek Canyon, Bear Lake County, Idaho.
   "Sept. 5, 1905."

That thereafter, and on or about September 19, 1905, Cook and the cattle company, without the knowledge, acquiescence, or assent of the defendant to the present suit, entered into an agreement in writing, in addition and supplemental to the agreements of August 15 and September 2, 1905, in and by which, in consideration of the mutual covenants and agreements of each party thereto, it was agreed, among other things, as follows: "Said Cook agreed to deliver to said cattle company seven thousand nine hundred and seventy-one (7,971) head of stock sheep at $3.00 per head, and four hundred and fifty (450) head of mixed cattle, more or less, at $22.00 per head, it being agreed therein that said sheep had already been delivered at the time of the execution of said contract, and this defendant alleges that said sheep referred to in said contract are the same sheep referred to in said contract and bill of sale of August 15th, and said contract of September 2d, and in the amended complaint, and it was therein further agreed by said Cook that he would bear all the expenses attending said suit in claim and delivery up to the 9th day of September, 1905, except the costs of court, not including the United States marshal's expenses and costs. And said cattle company in and by said agreement agreed to pay said Cook at the rate of $3.00 for each head of said sheep, and $22.00 for each head of cattle in the way and in the manner and at such times as were stated in said agreement;" that in and by the instrument of September 19, 1905, it was further agreed that Cook had already been paid by the cattle company $3,000 on account of the purchase price, and that $1,000 should be paid at the time of signing said agreement, and that the cattle company should pay the balance upon its promissory note dated September 19, 1905, due and payable on the 15th day of December, 1905, for the sum of $29,813, which note was to be secured by delivering to said Cook $30,000 worth of the capital stock of the cattle company shares at par value, and the certificates of stock to be delivered on or before September 25, 1905; that in accordance with the terms of the contract of September 19, 1905, and immediately thereafter, the cattle company paid Cook $1,000, and prior to September 25, 1905, executed and delivered to him its promissory note for the sum of $29,813, and also 300 shares of its capital stock of the par value of $100 per share, making a total of $30,000 worth of stock, which said note and stock he received as a full compliance with and satisfaction of the obligations of the cattle company under the said agreements and contracts, and in full of the balance due from the cattle company as the purchase price of all of the property, including that mentioned in the complaint in the present action; that the cattle company in due time and manner duly performed all of the conditions and obligations imposed on it by the agreement of September 19, 1905.

The amended answer in the present case further alleges that Cook was duly served with process in the replevin action in Bear Lake county, Idaho, by the United States marshal, on the 2d day of September, 1905, such service being duly indorsed on the original summons by the marshal, and by him duly returned to and filed in the court below on September 21, 1905; that by such summons Cook was required to appear and answer the complaint therein within 40 days from date of service, and that the summons further provided that if he failed to so appear and answer the plaintiff thereto would take judgment against him for the recovery of the sheep and other property there sued for, or for the value thereof in damages, and that he never did appear in that action, or answer or demur to the complaint as required by such summons, and was, after October 12, 1905, in default; that after the aforesaid agreements had been executed and delivered, and the provisions thereof complied with by the respective parties thereto, and the said sheep and other property had been turned over to the cattle company, and Cook had failed to appear or answer or demur in the replevin action after service upon him of process, and being in default, the cattle company, in accordance with its agreement with him, caused that action to be dismissed in accordance with the praecipe set out; that at the time the defendant, the Fidelity & Deposit Company of Maryland, agreed to furnish the undertaking sued on, it was understood and agreed by and between it and the cattle company that the compensation or premium to be

paid by the cattle company to the defendant for the undertaking should be and was $250, which was the sole consideration therefor; that on or about September 26, 1905, the cattle company informed the defendant that the replevin action and the controversy therein involved had been settled by mutual agreement, exhibited to the defendant a copy of the aforesaid agreement of September 19, 1905, and requested the defendant to remit a portion of its premium, which it did, in consideration of those representations, charging and receiving $175 in full payment for furnishing the undertaking, instead of $250, which it would have charged and received therefor had the plaintiff not entered into the aforesaid agreements and delivered the sheep as aforesaid; that at all times subsequent to the making of the agreements of September 2 and September 19, 1905, both Cook and the cattle company have acted under and recognized the existence, validity, and obligations thereof, and prior to the commencement of the present action those agreements were fully executed by both of the parties thereto; that Cook received and retains the $1,000 in the agreement of September 19th provided to be paid by the cattle company to him, in addition to the $3,000 paid to him by the cattle company on August 15, 1905, as a part of the purchase price of the sheep, and which he also still retains; that under the contract of September 19th he received from the cattle company its note for $29,813, negotiable in form, together with $30,000 worth of its capital stock to secure the said note, and that neither the note nor any part of the stock has ever been returned by him, and that he either retains the same and the whole thereof, or has otherwise disposed of the said property; that on or about the 18th day of December, 1905, the cattle company commenced an action in the district court of Buffalo county, Neb., against Cook, to recover $20,302 as damages alleged to have been sustained by it on account of the false warranty of Cook in relation to the sale of the said sheep, cattle, and other property mentioned in the aforesaid agreements and bill of sale; that on or about January 13, 1906, Cook appeared in that action, and filed his answer and cross-petition to the plaintiff's complaint; that in that answer and cross-petition Cook refers to the aforesaid replevin action in which the bond upon which the present suit is brought was given, and alleges that while said replevin action was pending, and for the purpose of settling the same, he and the cattle company entered into the aforesaid contract of September 2, 1905, and the option annexed thereto, and further set up that after the delivery and acceptance of the sheep as provided for in the said agreement of September 2, 1905, he and the cattle company entered into still another agreement concerning the subject-matter of said agreement of September 2d and the prior agreement of August 15th, to wit, the aforesaid agreement of September 19, 1905, which last-mentioned agreement the said Cook in his answer and cross-petition alleged was the final agreement made between him and the cattle company. And in his said answer and cross-petition Cook alleged that in accordance with the contract of September 19, 1905, the cattle company executed and delivered to him its promissory note for the sum of $29,813, payable December 15, 1905, and 300 shares of the par value of $100 each of its capital stock, and that he, Cook, delivered the cattle referred to in the said agreement, which were received and accepted by the cattle company without objection or complaint. And in his said cross-petition Cook set forth a copy of the said note for $29,813, and alleged that the same was executed by the cattle company in his favor as the balance of the purchase price of the sheep and cattle referred to in the aforesaid agreements and bill of sale, and in his said answer and cross-petition prayed for judgment against the cattle company for the full amount of the said note, with interest thereon from September 19, 1905, the date of the note, which answer and cross-petition was verified by him and filed with the clerk of the said court on or about January 13, 1906, copies of which answer and cross-petition are annexed to and made a part of the answer of the defendant to the present action.

The various agreements and exhibits referred to in the amended answer were introduced in evidence, and the record also shows that the $4,000 in cash paid by the cattle company to Cook was retained by him, and that he never offered to return any part thereof, and that he also retains the note

of that company for $29,813 secured by a deposit of its capital stock of the par value of $30,000, none of which has he ever returned or offered to return. It further appears from the record that the cattle company, which is a corporation of the state of Nebraska, complied with the laws of Wyoming governing foreign corporations doing business in that state. The execution by Cook of the bill of sale and various agreements is not disputed, nor is it anywhere pretended that he did not understand their purport, but the attempt was made on his behalf to show, by the witness McLaughlin, fraud and misrepresentations leading up to the execution of the agreements entered into subsequent to August 15, 1905.

Upon the conclusion of all of the evidence in the case, the court, on motion of the defendant company, directed a verdict in its favor, which was returned, and upon it judgment against the plaintiff in error was entered.

Jesse R. S. Budge, Frank K. Nebeker, and Stewart & Stewart, for plaintiff in error.

John W. Parish and D. Worth Clark, for defendant in error.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

ROSS, Circuit Judge (after stating the facts as above). Even if it be conceded that by the agreement of August 15, 1905, the title to the personal property thereby embraced did not pass to the cattle company (see Arkansas Cattle Co. v. Mann, 130 U. S. 69, 76, 77, 78, 9 Sup. Ct. 458, 32 L. Ed. 854), still it cannot be doubted that by the subsequent agreements between the parties, and by the subsequent delivery of the property by Cook's direction to the cattle company, title thereto did pass to it. And even if it should be conceded that in this action at law the plaintiff in error was entitled to show, if he could, that the agreements entered into subsequent to August 15, 1905, were executed by reason of fraud and misrepresentations, still, upon the most obvious principles of right, he could not avoid them while retaining the money and other property received by him by virtue of their execution. Hill v. Northern Pacific Railway Co., 113 Fed. 914, 51 C. C. A. 544, and cases there cited. But we think it very clear that the court below was right in refusing to permit the plaintiff in error to prove in the action at law that the agreements between Cook and the cattle company executed subsequent to August 15, 1905, were procured by fraud and misrepresentations. Pacific Mutual Life Insurance Company of California v. Webb, 157 Fed. 155, 84 C. C. A. 603, and the numerous cases there cited.

In respect to the suggestion that the plaintiff in error was at least entitled to nominal damages, it is enough to say that courts of justice do not reverse causes to award nominal relief only. Kelly et al. v. Fahrney, 97 Fed. 176, 38 C. C. A. 103, and cases there cited.

The judgment is affirmed.