UNION PAC. R. CO. v. SYAS (two cases).

(Circuit Court of Appeals, Eighth Circuit. November 2, 1917.)

Nos. 4810, 4811.

1. TRIAL ☞4—PRACTICE—STATUTE—"CASES IN EQUITY."

Under Judicial Code (Act March 3, 1911, c. 231) § 274b, as added by Act March 3, 1915, c. 90, 38 Stat. 956 (Comp. St. 1916, § 1251b), declaring that in all actions at law equitable defenses may be interposed by answer, plea, or replication, without the necessity of filing a bill, equitable relief may be granted in an action at law, but, in view of Const. art. 3, § 2, declaring that the judicial power shall extend to all cases in law and equity, the act did not in any way, except as to procedure, change the essential distinction between law and equity, cases in equity being those which in the jurisprudence of England were so called, as contradistinguished from cases at common law at the time of the framing of the Constitution; and hence, when equitable relief is asked in an action at law, the case for equitable relief should be tried as a case in equity and first disposed of before proceeding in the action at law.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Equity Case.]

---

2. CANCELLATION OF INSTRUMENTS ⬤⟿32—SETTING ASIDE RELEASE—EQUITABLE PROCEEDING.

   A proceeding to rescind a release on the ground that it was obtained through fraud is essentially an equitable proceeding.

3. TRIAL ⬤⟿3—PROCEEDINGS—SUBMISSION OF ISSUES TO JURY.

   In an action for damages for personal injuries, where defendant set up a release, which plaintiff attacked as having been procured by fraud, it is improper, though equitable relief is allowed in an action at law, for the court to submit the question of fraud to the same jury trying the action for damages, even though the question of fraud may be submitted to a jury for an advisory verdict.

4. APPEAL AND ERROR ⬤⟿1046(4)—REVIEW—HARMLESS ERROR.

   In an action at law for damages for personal injuries, where defendant set up a release, which plaintiff attacked as having been procured by fraud, the submission to the jury trying the action at law of the question of fraud for an advisory verdict to the court sitting as a chancellor was prejudicial error, for the jury might well have been swayed in their determination of the question of fraud by sympathy for plaintiff's injuries; the jury having been informed by the instructions that there could be no recovery until the release was set aside.

5. APPEAL AND ERROR ⬤⟿1046(1)—HARMLESS ERROR.

   An error in procedure cannot be treated as harmless, on the theory that the judgment was just, where the error was such that the trial was not according to due process of law.

6. APPEAL AND ERROR ⬤⟿3—REVIEW—MODE OF REVIEW.

   Under Act Sept. 6, 1916, c. 448, § 4, 39 Stat. 727 (Comp. St. 1916, § 1649a), declaring that no court having power to review a judgment or decree rendered or passed by another shall dismiss a writ of error solely because an appeal should have been taken, or dismiss an appeal solely because a writ of error should have been sued out, it is immaterial whether the method of review of actions at law where equitable defenses are interposed, pursuant to Judicial Code, § 274b (section 1251b), are brought by appeal or writ of error.

In Error to and Appeal from the District Court of the United States for the District of Colorado; Robert E. Lewis, Judge.

Action by James Syas against the Union Pacific Railroad Company. There was a judgment for plaintiff, and defendant brings error and appeals. Reversed and remanded, with directions.

John Q. Dier, of Denver, Colo. (N. H. Loomis, of Omaha, Neb., and C. C. Dorsey and R. L. Stearns, both of Denver, Colo., on the brief), for plaintiff in error and appellant.

Omar E. Garwood, of Denver, Colo. (William W. Garwood and George O. Marrs, both of Denver, Colo., on the brief), for defendant in error and appellee.

Before CARLAND, Circuit Judge, and AMIDON and MUNGER, District Judges.

CARLAND, Circuit Judge. James Syas, hereafter called plaintiff, commenced this action to recover of the railroad company, hereafter called defendant, damages for personal injuries received by him through the alleged negligence of the defendant. Among other defenses pleaded by the defendant was a release and satisfaction executed

---

⬤⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

by the plaintiff of all claims for damages growing out of personal injuries received. In his reply to this defense the plaintiff alleged:

"With reference to the allegations contained in the fifth affirmative defense of said answer, this plaintiff says: He denies that on or about the 5th day of March, 1915, or at any other time, he made any settlement of his claim against the defendant, or that he made, executed, or delivered to the defendant any valid written release in full settlement or discharge of his claim, or at all, and denies that he ever released or discharged the defendant of any claims or demands whatsoever, either on account of said accident or otherwise; and he denies that the defendant's liability for said accident has in any way been extinguished, but, on the contrary, he avers that the defendant fraudulently, and with intent to deprive the plaintiff of his legal remedies on account of said accident, took advantage of the plaintiff when he was suffering from his injuries, and when he was sick and in great distress of body and mind, and wrongfully and fraudulently promised and assured the plaintiff, and gave plaintiff to understand, that if he would sign a certain paper, the contents of which were and are to him unknown, but which he is informed and believes, and so avers, is substantially the same as that set out in the fifth defense of defendant's answer, the defendant would give him lucrative employment for the remainder of his life, in which employment he could earn a livelihood, and at the time of signing said paper the defendant's claim agent positively stated to the plaintiff that the signing of said paper was a mere formality, and that the defendant company would, without fail, give him regular employment in which he could earn a livelihood, and he signed said paper relying upon such assurances, and believing that the defendant would not fail to give him employment from which he could earn a livelihood, and it was not until some time thereafter that plaintiff learned that the defendant never intended to give any employment, or to enable him to earn a livelihood from any employment with the defendant. Plaintiff admits that he received the consideration mentioned in said instrument, but he avers that the same was wholly inadequate and unconscionable, and was given to plaintiff only for actual expenses incurred in the treatment and care of his injuries."

On the filing of the reply counsel for defendant petitioned the court that all issues both of law and fact arising out of the pleadings with reference to the release should be heard and determined upon the equity side of the court prior to the trial of the other issues in the case arising on the complaint, answer, and reply. This petition was denied, and an exception allowed. The case subsequently came on for trial, and counsel for defendant again at the opening of the trial requested that the court, sitting as a chancellor, determine the equity issues raised by the pleadings with reference to the release prior to the trial of the case at law for damages. This request was refused, and an exception allowed. The case was then tried to the court sitting with a jury upon all the issues made by the pleadings, both legal and equitable. After the close of all the evidence counsel for defendant filed a written request that the court sitting as a court of chancery make findings of fact and law, and enter a decree thereon disposing of the issues raised by the pleadings in relation to the release, in favor of the defendant; said request being accompanied by specific findings. This request does not seem to have been formally ruled upon, except by the court submitting the equitable issues to the jury. The court, in charging the jury, among other things said:

"Now, the defendant insists that that raises an equitable issue—the question as to whether or not the release is voidable for fraud—to be tried only by

the court, and in that the court at the request of the defendant acquiesces; but it has a right to present to you for its guidance as advisory to the court only that issue, and take from you your verdict on that issue, and therefore this case presents itself to you, as it will be submitted to you by the court, in a double aspect—that is, there are two issues. The first, the validity or invalidity of that release, and that you must determine first; and if that release is held valid and binding and, was not obtained by fraud, as the plaintiff claims, that is the end of this case—he cannot recover. If, on the other hand, as already said to you, it should be determined by the court that that release was obtained by fraud on the part of White, the agent who got it, then it does not stand in the way of his right to recover damages here; it will be set aside, and you can then consider whether or not, and how much, he is entitled to recover in the way of damages; and thus on the first issue, on which I take your verdict as advisory to the court, there will be submitted to you two forms of verdict, one of which is in this language: 'We, the jury, on our oath do say we find that no fraudulent representations or promises were made by defendant which induced him to agree to and sign the release offered in evidence.' If you should so find he cannot recover, I take it that you will then sign a verdict in favor of the defendant, the form of which is attached to this same verdict: 'We, the jury, find the issues in favor of the defendant.' On the other hand, if on that issue you should find to the contrary, you will use this form of verdict: 'We, the jury, on our oath do say we find that plaintiff was induced to execute the written release, offered in evidence, by fraudulent representations and promises made to plaintiff by the witness White; that said representations and promises were material, were believed and relied on by the plaintiff, and induced the plaintiff to sign the release; and that he would not have agreed to and signed said release but for his belief and reliance on said representations and promises.' If you find that verdict, I assume, necessarily, that you will then find in favor of the plaintiff on the question of damages. You may or you may not, but that we will consider later. In that event there is a form of verdict in favor of the plaintiff. Insert the amount of damages which you decide, if you find in his favor, that he should recover. * * *

"Counsel for plaintiff has said in his argument that, if you find for the plaintiff, you will deduct from the gross sum, which you find constituted damages, the $750 which he has already received. You are instructed, on account of the request of the defendant that the equitable feature of this case be kept separate from the law feature, not to do that. If the release is held to be fraudulent, and judgment entered in the records of the court setting it aside for that reason, that judgment will provide that the plaintiff must pay back that $750 to the defendant. If you find a verdict in his favor, for instance, $5,000, he will have a judgment for $5,000, and then the $5,000 judgment in his behalf will be satisfied to the extent of $750 in behalf of the defendant. So, if you find for the plaintiff, you will state in your verdict the full amount, regardless of the $750 which he has received, that in your judgment, under the evidence in this case, you believe he is entitled to recover."

Counsel for defendant, after the charge was given, again excepted to the refusal of the court to try the equitable issues as requested. The jury returned two verdicts, as follows:

"We, the jury, on our oath do say we find that the plaintiff was induced to execute the written release, offered in evidence, by fraudulent representations and promises made to plaintiff by the witness White; that said representations and promises were material, were believed and relied on by the plaintiff, and induced the plaintiff to sign the release; and that he would not have agreed to and signed said release but for his belief in and reliance on said representations and promises."

"We, the jury in the above-entitled case, upon our oath do say we find the issues herein joined in favor of the plaintiff, and assess his damages at the sum of ($7,500.00) seven thousand five hundred dollars."

Upon which verdicts the following judgment was rendered:

"And thereupon the court, sitting as a chancellor, adopts as its findings the finding of facts made by the jury as to the fraudulent representations and promises made to plaintiff by which he was induced to sign the release and settlement of date March 5, 1915, and set up as a fifth defense in the answer herein, and finds that said release and settlement was fraudulently obtained as alleged and pleaded in the reply to said answer.

"Wherefore it is considered by the court that the release and settlement made, executed, and delivered by the plaintiff to defendant on the 5th day of March, A. D. 1915, under and by which the plaintiff accepted the sum of seven hundred and fifty dollars ($750.00) in full satisfaction of his claim for damages against the defendant, sued upon in his complaint herein, be, and the same is hereby, vacated, set aside and for naught held; but upon the condition, nevertheless, that the plaintiff pay to the defendant the said sum of seven hundred and fifty dollars ($750.00), together with interest thereon at the rate of 8 per cent. per annum from the 5th day of March, A. D. 1915—said payment, however, to be made by crediting the defendant with said sum and interest on its payment of the judgment herein rendered against it for the damages assessed to the plaintiff for the injuries by him sustained.

"It is further considered by the court, upon the verdict of the jury herein, that the plaintiff do have and recover of and from the defendant the sum of seven thousand five hundred dollars ($7,500.00), his damages by him sustained by occasion of the premises in his complaint herein set forth and alleged in form aforesaid assessed, together with his costs by him in this behalf laid out and expended, to be taxed, and have execution therefor."

The defendant has brought the case here both by writ of error and appeal.

[1] The state of the pleadings below, so far as they mingle legal and equitable issues, is justified no doubt by section 274b of the Judicial Code (Act March 3, 1915, c. 90, 38 Stat. 956 [Comp. St. 1916, § 1251b]), which is in these words:

"That in all actions at law equitable defenses may be interposed by answer, plea, or replication without the necessity of filing a bill on the equity side of the court. The defendant shall have the same rights in such case as if he had filed a bill embodying the defense of seeking the relief prayed for in such answer or plea. Equitable relief respecting the subject-matter of the suit may thus be obtained by answer or plea. In case affirmative relief is prayed in such answer or plea, the plaintiff shall file a replication. Review of the judgment or decree entered in such case shall be regulated by rule of court. Whether such review be sought by writ of error or by appeal the appellate court shall have full power to render such judgment upon the records as law and justice shall require."

This statute brings into the federal courts the procedure that has long prevailed in many of the states where Codes of Civil Procedure have been adopted. The statute is intended to prevent a circuity of action by allowing the rights of either party to an action at law, whether legal or equitable, in respect to one subject-matter, to be determined in one action; but, while the statute permits the granting of equitable relief in an action at law, Congress did not intend, in our opinion, to change in any way, except as to procedure, the essential distinction between law and equity. Basey v. Gallagher, 20 Wall. 670, 22 L. Ed. 452, and Quinby v. Conlan, 104 U. S. 420, 26 L. Ed. 800. Congress legislated with full knowledge of the grant of jurisdiction contained in section 2 of article 3 of the Constitution, to the effect that "the judicial power shall extend to all cases, in law and equity." The Supreme

Court has decided that the words "cases in equity" mean those cases which in the jurisprudence of England were so called as contradistinguished from cases at common law at the time of the framing of the Constitution. Robinson v. Campbell, 3 Wheat. 212, 4 L. Ed. 372; United States v. Howland, 4 Wheat. 108, 4 L. Ed. 526; Parsons v. Bedford, 3 Pet. 433, 7 L. Ed. 732; Bennett v. Butterworth, 11 How. 669, 13 L. Ed. 859; Fenn v. Holme, 21 How. 481, 16 L. Ed. 198. Therefore it will not be presumed that Congress intended to make any serious change in the constitutional classification, even if it could do so. Heine v. Levee Commissioners, 19 Wall. 655, 22 L. Ed. 223. Moreover, the law in terms preserves the distinction by declaring:

"Equitable relief respecting the subject-matter of the suit may thus be obtained by answer or plea."

We are clearly of the opinion that, when equitable relief is asked in an action at law under the statute above quoted, the case for equitable relief should be tried as a case in equity, and that the great weight of authority is in favor of the practice of trying the case in equity first, for this practice serves to keep the equitable matter distinct, and to prevent what must otherwise frequently ensue—confusion and embarrassment in the progress of the action. Thayer v. White, 3 Cal. 228; Lestrade v. Barth, 19 Cal. 671; Basey v. Gallagher, supra; Quinby v. Conlan, supra; Bohall v. Dilla, 114 U. S. 47, 5 Sup. Ct. 782, 29 L. Ed. 61; Cornelius v. Kessel, 128 U. S. 456, 9 Sup. Ct. 122, 32 L. Ed. 482; Arguello v. Edinger, 10 Cal. 150; Estrada v. Murphy, 19 Cal. 248; Weber v. Marshall, 19 Cal. 447; Swasey v. Adair, 88 Cal. 179, 25 Pac. 1119; Rosierz v. Van Dam, 16 Iowa, 175; Van Orman v. Spafford, 16 Iowa, 186; Allen v. Logan, 96 Mo. 591, 10 S. W. 149; Peterson v. Philadelphia Mortgage & Trust Co., 33 Wash. 464, 74 Pac. 585; Hotaling v. Bank, 55 Neb. 5, 75 N. W. 242; Arnett v. Smith, 11 N. D. 55, 88 N. W. 1037; Hancock v. Blackwell, 139 Mo. 440, 41 S. W. 205; 7 Enc. Pleading and Practice, 810, 811.

The case of Hancock v. Blackwell, supra, is quite in point. The suit was for slander. The defendant pleaded a written release. Plaintiff admitted the execution of the release, but alleged the same had been procured from her through fraud. When the case was called for trial the defendant demanded that the issues on the release be first tried and determined by the court, which the court refused to do, and proceeded to try the case with a jury. The trial resulted in a verdict and judgment in favor of the plaintiff. The Supreme Court of Missouri, in reversing the case for the refusal of the trial court to try the equitable issues with reference to the validity of the release, said:

"In such circumstances the issue of fraud should be tried by the court; and the evidence in order to justify setting aside the release should be clear and satisfactory, 'such as will preponderate over presumption or evidence on the other side.' 1 Bigelow on the Law of Frauds, p. 123. By proceeding this way the burden of proof rests on the plaintiff to establish the fraud by clear and satisfactory evidence, while in trying such an issue before a jury a preponderance of evidence is only required to set aside the release. The plaintiff should not, under the circumstances, be permitted to ignore the release, and prosecute her action at law, without first having the release set aside by a proceeding in equity for that purpose, either by original bill or, as the offer

to refund the money was made before the commencement of this suit, by amending her petition so as to embrace a count for that purpose."

[2] The proceeding to rescind the release in this case, whether by original bill or as permitted by the statute, was essentially an equitable proceeding. U. P. R. R. Co. v. Harris, 63 Fed. 800–803, 12 C. C. A. 598; Pacific Mutual Life Insurance Co. v. Webb, 157 Fed. 155, 84 C. C. A. 603, 13 Ann. Cas. 752; U. P. R. R. Co. v. Whitney, 198 Fed. 784–788, 117 C. C. A. 392; Standard Corporation v. Evans, 205 Fed. 1, 125 C. C. A. 1. Justice Field, when a member of the Supreme Court of California, wrote many of the California decisions cited, and again announced the same views in two of the cases cited from the Supreme Court of the United States, which, of course, are controlling so far as this court is concerned.

[3] In the case before us, and all others like it, where it appears that no damages can be recovered until the release is out of the way, orderly procedure and a due regard for the rights of the parties demands that the equitable issues should be first tried by the court sitting as a court of equity. It is true the chancellor may take the advice of a jury, but in such cases the issues to be passed upon by the jury should be carefully framed, and the jury should not be the one which also tries the action at law, as the desire of the jury to render a verdict in the law action in favor of plaintiff or defendant may so cloud their judgment as to render their advice unsafe to follow. We are of the opinion that the failure of the trial court to try the equitable issues raised by the pleadings as a court of equity prior to the trial of the action for damages, as requested by counsel for the defendant, was prejudicial error, in view of the character of the evidence and the charge of the court.

[4] The plaintiff was seriously injured, and the same jury which the court had impaneled to advise it with reference to the issues in regard to the release was also to say whether the plaintiff should recover damages from the defendant. The nature of plaintiff's injuries, as is usual in such cases, was such as to excite the sympathy of the average man. In this condition of the case the jury were told by the court that they could not return a verdict in favor of the plaintiff in the action for damages until the release was out of the way; that they must pass upon the validity of the release before proceeding to the action for damages, but at the same time they were also in effect told that the $750, which the plaintiff was obliged to return to the defendant, in order to have the release set aside, could be obtained by rendering a verdict against it for damages in the law action. This instruction for all practical purposes permitted the jury to find a verdict against the defendant in the case for damages, in order that money might be obtained to pay to the defendant the $750 required to be paid to it before the release could be avoided. It would seem that a duty was imposed upon the jury by the court that was impossible in the nature of things for it to perform, and at the same time follow the court's charge in other respects. But, whatever may be said, this was not the trial in a court of equity of the equitable issues to which the defendant was entitled and which it demanded. The trial court was of the opinion that

he had tried the equitable issues as a chancellor, using the verdict of the jury on those issues as merely advisory. The trouble with this view of the case is that the trial court adopted the finding of the jury upon the equitable issues as its own.

[5, 6] Counsel for plaintiff urges that the judgment rendered was just, and ought not to be reversed for error in procedure, if any. But no judgment is just, if not obtained by due process of law; otherwise, courts could enter judgments without trial. This court has not yet adopted any rule as to how cases under section 274b of the Judicial Code shall be reviewed, but under section 4 of an act to amend the Judicial Code, approved September 6, 1916 (chapter 448, First Session, 64th Congress, page 726 [Comp. St. 1916, § 1649a]), and under said section 274b it would seem to be immaterial whether the case was brought here by appeal or writ of error.

We are satisfied, however, that we ought not to review the errors of law, properly assigned, arising in the case for the trial of damages, or to try de novo the equitable issues raised by the pleadings, until a trial is had below in conformity to what we believe to be the proper practice. We are further of the opinion that the defendant was prejudiced in regard to both the equitable issues and the legal issues by the manner in which the case was tried. We therefore reverse the judgment below as to the equitable issues, and also the judgment for damages, and remand the case, with instructions to proceed therein in conformity to the views expressed in this opinion.